UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X

NELSON CRUZ,

                Petitioner,

-against-

JAMES CONWAY, *Superintendent,*
*Attica Correctional Facility,*

                Respondent.
------------------------------------------------------------------- X

05 CV BROOKLYN OFFICE

NOT FOR ELECTRONIC
OR PRINT
PUBLICATION

OPINION
AND ORDER

ROSS, United States District Judge:

Pro se petitioner Nelson Cruz filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on September 26, 2005. By order dated November 1, 2005, the petition was stayed pursuant to Rhines v. Weber, 544 U.S. 269 (2005), to enable exhaustion of the claims raised in his motion under N.Y. Crim. Proc. Law § 440.10, which was then pending before New York's Appellate Division, Second Department. On March 14, 2006, Mr. Cruz returned to this court, filing an amended petition raising the same two claims as in his initial petition plus three additional claims. For the reasons stated below, the court denies the petition.

## BACKGROUND

Following a jury trial in New York State Supreme Court, Kings County, petitioner was convicted of murder in the second degree and sentenced on March 12, 1999, to a term of imprisonment of twenty-five years to life. At trial, the prosecution presented evidence that on the evening of March 28, 1998, petitioner and an individual known as Shack were arguing on a street corner in Brooklyn. Shack accused petitioner of snitching on him and pulled a gun on him, but

1

the fight dissipated and the two went their separate ways. Later that evening, petitioner returned to the corner, looking for Shack. Petitioner approached Trevor Vieira and asked him if he had given Shack a gun. Petitioner was holding a gun as he argued with Mr. Vieira. As Mr. Vieira was walking away, petitioner shot him in the back. Mr. Vieira fell to the ground, pulled out a gun and fired one shot, and then petitioner shot him again, killing him.

At trial, the court submitted one count of intentional murder and one count of depraved indifference murder to the jury, instructing them to consider the counts in the alternative. (Tr. 393-398.) The jury acquitted petitioner of intentional murder, but found him guilty of depraved indifference murder. (Tr. 445-446.)

On direct appeal, petitioner argued that evidence of recklessness was insufficient to sustain his conviction of depraved indifference murder; his sentence was excessive; and the trial court had erred in denying his request for a missing witness charge as untimely. The Appellate Division affirmed petitioner's conviction and sentence. See People v. Cruz, 282 A.D.2d 755 (N.Y. App. Div. 2d Dep't 2001). The Court of Appeals denied leave to appeal on August 20, 2001. See People v. Cruz, 96 N.Y.2d 917 (2001).

Petitioner subsequently sought to vacate his conviction pursuant to N.Y. Crim. Proc. Law § 440.10. Petitioner argued that he was entitled to relief based on newly-discovered evidence and the ineffective assistance of trial counsel. The trial court denied the motion by decision dated March 5, 2003. The Appellate Division granted leave to appeal and subsequently affirmed the denial. See People v. Cruz, 23 A.D.3d 577 (N.Y. App. Div. 2d Dep't Nov. 21, 2005). On February 16, 2006, the Court of Appeals denied leave to appeal. See People v. Cruz, 6 N.Y.3d 811 (2006).

# DISCUSSION

*A. Insufficient Evidence of Depraved Indifference Murder*

Petitioner argues that there was insufficient evidence to convict him of depraved indifference murder because the evidence at trial indicated that if he committed the homicide at all, he did so with the conscious intent to kill the victim.

Petitioner raised this claim on direct appeal. The Appellate Division held that the claim was "not preserved for appellate review," People v. Cruz, 282 A.D.2d 755, 756 (N.Y. App. Div. 2d Dep't 2001), because at the close of all of the evidence trial counsel only generally moved for a directed verdict based on the insufficiency of evidence of "the crimes charged" (Tr. 319-20), without raising the specific argument distinguishing between depraved indifference and intentional murder. Although the Appellate Division went on "in any event" to rule on the merits of petitioner's sufficiency challenge, see Cruz, 282 A.D.2d at 756, the state court's decision nonetheless rests on a state procedural bar and "such a claim is not preserved." See Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 810 n.4 (2d Cir. 2000).

Respondent argues that the Appellate Division found petitioner's related ineffective assistance of counsel claim procedurally barred, thereby precluding petitioner from invoking ineffective assistance of counsel as cause to excuse this procedural default. (Resp. Mem. 6.) In affirming the denial of petitioner's 440 motion, the Appellate Division held that petitioner "was provided with meaningful representation," and then went on to state, "The defendant's remaining contentions are without merit (see CPL 440.10[2][c]; see also People v. Favor, 82 N.Y.2d 254, 260-261, 604 N.Y.S.2d 494, 624 N.E.2d 631)." People v. Cruz, 23 A.D.3d 577 (N.Y. App. Div. 2d Dep't 2005). From this opinion, it is not clear which "remaining contentions" of trial

3

counsel's ineffectiveness were found procedurally barred by N.Y. Crim. Proc. Law § 440.10[2][c]. The citation of Favor, 82 N.Y.2d at 260-61, which discusses when to apply new rulings retroactively, suggests the Appellate Division counted the claim of ineffective assistance based on the failure to make a sufficiency objection as one of the "remaining contentions."

Regardless, petitioner's claim of insufficient evidence to support his conviction is without merit. "The Supreme Court has held that 'in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254, . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" Policano v. Herbert, 430 F.3d 82, 86 (2d Cir. 2005) (quoting Jackson v. Virginia, 443 U.S. 307, 324 (1979)). This question is determined "after viewing the evidence in the light most favorable to the prosecution." Jackson v. Virginia, 443 U.S. 307, 319 (1979). "[P]etitioner bears a very heavy burden in convincing a federal habeas court to grant a petition on the grounds of insufficiency of the evidence." Fama, 235 F.3d at 811. "State law determines the elements of a crime that must be supported by sufficient evidence to satisfy constitutional due process." Policano, 430 F.3d at 92.

As petitioner concedes, "[t]he facts in this case are similar to those presented in Policano." (Pet. Reply 6.) In Policano, the New York Court of Appeals held that in 2001 New York law provided that "the very facts establishing a risk of death approaching certainty and thus presenting compelling circumstantial evidence of intent–for example, a point-blank shooting of the victim in the head–likewise demonstrated depraved indifference." Policano v. Herbert, 7 N.Y.3d 588, 601 (2006). Although New York law on this point has since changed, see id., at the time petitioner's conviction became final in 2001, the evidence was sufficient for a rational juror

4

to find petitioner guilty of depraved indifference murder beyond a reasonable doubt. See Farr v. Greiner, No. 01 Civ. 6921, 2007 WL 1094160, at *21-*24 (E.D.N.Y. Apr. 10, 2007).

The Appellate Division's decision that the evidence "was legally sufficient to establish the defendant's guilt beyond a reasonable doubt," Cruz, 282 A.D.2d at 756, was, therefore, neither contrary to, nor an unreasonable application of, clearly established federal law.

*B. Weight of the Evidence*

Petitioner next argues that his conviction was against the weight of the credible evidence. A challenge to the weight of the evidence, as opposed to its sufficiency, is not cognizable on habeas review. See Correa v. Duncan, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001). This claim is therefore denied.

*C. Excessive Sentence*

Petitioner argues that the sentence imposed was excessive and in violation of the Eighth Amendment. Respondent argues that this claim was not exhausted. (Resp. Mem. 1.) Although petitioner argued on direct appeal that his sentence was excessive, he presented that argument purely in terms of state law, without citing the Eighth Amendment.

Regardless of the exhaustion requirement, petitioner is not entitled to relief on this claim. He was not entitled to be sentenced as a juvenile offender, see N.Y. Penal Law § 10.00[18], and so his sentence falls within the range prescribed by state law, see id. at § 70.00[2][a], [3][a][i]. His sentence therefore raises no federal constitutional issue, and his invocation of the Eighth Amendment is in vain. See Watkins v. Perez, No. 05 Civ. 477, 2007 WL 1344163, at *24 (S.D.N.Y. May 7, 2007) (holding that 25-to-life sentence for second degree murder does not raise an issue under Eighth Amendment).

5

*D. Newly Discovered Evidence*

Petitioner next argues that newly discovered evidence–affidavits from William Wilson and Bonnie Cooper that purport to contradict the trial testimony of Andrew Bellinger, the prosecution's eyewitness–entitles him to relief.

"Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." Herrera v. Collins, 506 U.S. 390, 400 (1993). Petitioner has not asserted an independent constitutional violation in connection with this evidence and so his claim is denied.

Petitioner argues in his reply brief that he amended his petition to use the newly discovered evidence to assert a denial of his constitutional rights to a fair trial, due process, and effective assistance of counsel because counsel failed to discover this new evidence. (Pet. Reply 8.) The original and amended petitions submitted to this court, however, contain no such claims. Nor did petitioner present them to the state courts. In any event, the newly discovered evidence is such that these unexhausted claims are meritless even if the court were to consider them as supplementing the amended petition. The affidavits–from a prisoner at Attica claiming to be an eyewitness and the prosecution's eyewitness's ex-girlfriend averring that he was not at the scene–do not present compelling evidence implicating the fundamental fairness of the trial. See Marino v. Miller, No. 97 Civ. 2001, 2002 WL 2003211, at *10 (E.D.N.Y. Aug. 22, 2002) (rejecting similar habeas claim based on affidavit from eyewitness disputing defendant's presence at crime scene). The affidavits' lack of credibility and minimal probative value cannot support a claim of counsel's ineffectiveness for failing to discover and present these witnesses at

trial. In short, they do not "undermine confidence in the outcome." Strickland v. Washington, 466 U.S. 668, 694 (1984).

*E. Ineffective Assistance of Counsel*

Finally, petitioner argues that he was denied effective assistance of counsel based on three alleged failures by trial counsel: (1) counsel's inadequate cross-examination of police officer William Piatti; (2) counsel's untimely motion for a missing witness charge; and (3) counsel's failure to object to the submission to the jury of the depraved indifference charge in light of the evidence of intentional conduct. For the following reasons, these claims are denied.

(1) Petitioner argues that trial counsel was ineffective for failing to cross-examine Officer Piatti on the account of the incident he provided in contemporaneous police reports. Petitioner argues that the police reports indicate Piatti observed Eduardo Rodriguez holding the gun when Piatti saw a muzzle flash and that Rodriguez was pointing the gun in a direction as opposed to just picking the gun up off the ground and handling it delicately, as the prosecution argued in summation.

Petitioner must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment," and that it constitutes "sound trial strategy." Strickland, 466 U.S. at 689. "Decisions about whether to engage in cross-examination, and if so to what extent and in what manner, are strategic in nature and generally will not support an ineffective assistance claim." Dunham v. Travis, 313 F.3d 724, 732 (2d Cir.2002) (internal quotations omitted); see also United States v. Luciano, 158 F.3d 655, 660 (2d Cir.1998) ("[T]he conduct of examination and cross-examination is entrusted to the judgment of the lawyer, and an appellate court on a cold record should not second-guess such decisions unless there is no

7

strategic or tactical justification for the course taken.").

The police reports petitioner wishes counsel had used on cross are the notes of an interview of Piatti conducted at 1:30 a.m. on the morning following the shooting. In the interview Piatti stated:

> I heard gunshots coming from the left of our patrol car. I exited the car and saw a number of muzzle blasts coming from in front of me (Bradford Ave.) and to the left side of Pitkin Ave. (sidewalk)[.] People started running in every direction. My attention was drawn to a male Hispanic (ponytail) *pointing a blk gun towards Bradford Ave, I saw a muzzle flash near his gun.* At some point this male pointed his gun down, I saw him lower the gun. I was pointing my gun at him yelling for him to put the gun down. I yelled at him a number of times to put the gun down. . . . The male (ponytail) then yelled to me I'm dropping it, I'm dropping it (meaning the gun) He then dropped the gun onto the sidewalk.

(Resp. Ex. H at Ex. A (emphasis added).)

At trial, Piatti testified that after exiting the patrol car and seeing people running in every direction, he "saw a male Hispanic crouched down with a firearm in his hand." (Tr. 285-86.) On direct examination, Piatti testified that he did not have a clear line of vision on this man, but he saw that he "was crouched down and he was holding a gun pointed toward the ground," he was holding the gun "[r]eal flimsily," not like he was about to shoot it. (Tr. 286.) Piatti further testified that he did not see him fire the gun at any time. (Id.) This male Hispanic with a ponytail was later identified as Rodriguez. (Tr. 288.)

On cross examination, petitioner's counsel elicited from Piatti that he saw muzzle flashes and heard shots fired just as he arrived at the scene. (Tr. 298.) Under counsel's questioning, Piatti testified that he never saw petitioner at the scene, but he did see Rodriguez there with a gun in his hand. (Tr. 299.) Piatti also stated that he never saw Rodriguez pick the gun up off the

8

ground. (Tr. 300.) Counsel concluded his cross-examination by asking, "And just finally, so there's no doubt, you arrested Eduardo Rodriguez on the scene of this incident with a 9-millimeter gun in his hand, correct?" (Tr. 303.) To which Piatti replied, "Correct." (Id.)

In summation, defense counsel recounted Piatti's testimony of seeing Rodriguez with the gun and seeing the muzzle flashes. (Tr. 336.) Counsel further argued, "There was no evidence that Eduardo Rodriguez picked that gun up from the street. He had it in his hand when Officer Piatti got out of the car." (Tr. 336.) Counsel later repeated this argument, saying, "[Piatti] never saw him pick up a gun. He never saw anyone drop a gun. He saw [Rodriguez] with a gun in his hand that's the gun that the prosecution claims is the murder weapon." (Tr. 346-47.)

The prosecution argued in summation that Rodriguez was seen

> crouching down, holding a gun, not shooting it, not pointing it, holding it downward in what Officer Piatti describes as a somewhat flimsy way. From those facts you can infer he was picking the gun up. Why else would he be crouched down on the ground picking up a – holding a gun? . . . It's not important why he picked the gun up. What's important is that he did; that from the first moment he was never considered the shooter; that the police interviewed the three witnesses that they had that night, and made a determination from speaking to those three people that [petitioner] was the shooter.

(Tr. 373-74.)

This record reveals that defense counsel effectively cross-examined Officer Piatti, eliciting testimony from him to suggest that Rodriguez, not petitioner, was the shooter and arguing this point in summation. The prosecution and the defense suggested competing inferences for the jurors to draw from Piatti's observations of Rodriguez. The prosecution argued that Rodriguez had just picked up the murder weapon that petitioner had discarded, while

9

the defense argued that Rodriguez had just fired the murder weapon himself. Although counsel might have used the interview notes to highlight Piatti's observation of muzzle flashes and how Rodriguez was pointing the gun, his failure to do so did not fall below "an objective standard of reasonableness" under "prevailing professional norms." See Strickland, 466 U.S. at 687-88. On cross-examination and in summation, counsel focused on the main point underlying his argument as opposed to the prosecution's. His decision to do so instead of questioning Piatti on his observation of muzzle flashes, which might have been confused, or how firmly or flimsily Rodriguez was holding the gun after shots were fired, which would be consistent with either theory of the case, constitutes adequate representation. Petitioner has not overcome the strong presumption that counsel's conduct was reasonable, nor that he was prejudiced by counsel's failure to extend his cross-examination into these details.

(2) Petitioner next argues that he was denied effective assistance of trial counsel because his lawyer made an untimely motion for a missing witness charge for Eduardo Rodriguez and William Johnson. This claim is also meritless. Petitioner presented this claim to the state trial court in his 440 motion. However, his counsel's brief to the Appellate Division abandoned the claim. (See Resp. Ex. L1 at 15 n.4.)

Regardless, petitioner cannot establish ineffective assistance of counsel on this basis because he has not shown that he was prejudiced by the absence of such a charge.

At trial, the prosecution opposed defense counsel's request for a missing witness charge on the grounds that the witnesses were unavailable and the motion was untimely. (Tr. 323-24.) The prosecution was about to set forth its efforts to locate the witnesses, who had been arrested at the crime scene, when the colloquy came to focus on the timeliness of the motion. (Tr. 324.)

10

While "[i]t is not clear that defendant was entitled to a missing witness charge," as the trial court held in denying his 440 motion, the record makes clear that petitioner was not prejudiced by its absence. In summation, counsel argued, "Where was Eduardo Rodriguez? He never came in to testify. Where is he? Where is William Johnson? He never came in to testify. He was on the scene. Where are they?" (Tr. 338.) Counsel used this absence of evidence to suggest reasonable doubt to the jurors. In addition, counsel argued that the police never investigated whether Bellinger, the testifying eyewitness, had a relationship with Rodriguez or Johnson. (Tr. 337, 350.) And counsel repeatedly argued that evidence suggested Rodriguez might have been the shooter. (Tr. 336-38, 346-47, 351.) On this record, there is no reasonable probability that, but for the untimeliness of counsel's request, the result of the proceeding would have been different. See Strickland, 466 U.S. at 694; Farr v. Greiner, No. 01 Civ. 6921, 2007 WL 1094160, at *14 (E.D.N.Y. Apr. 10, 2007) ("Since defense counsel was permitted to emphasize those witness's absence in summation, there is no prejudice to petitioner." (rejecting habeas claim that trial court erred in denying missing witness charge)); Ramos v. Phillips, No. 05 Civ. 0023, 2005 WL 1541046, at *9 (E.D.N.Y. 2005) (rejecting ineffective assistance claim because "it cannot be said that defendant would have obtained a greater benefit had the jury been permitted to consider the adverse inference contained in the missing witness charge" where defense counsel highlighted absence of witness in summation); Rivera v. Duncan, No. 00 Civ. 4923, 2001 U.S. Dist. LEXIS 20359, at *75 (S.D.N.Y. Dec. 11, 2001) ("[A]ny error in not requesting a missing witness instruction was ameliorated by defense counsel's summation.")

(3) Petitioner finally argues that trial counsel was ineffective for failing to object to the sufficiency of evidence of depraved indifference. Counsel's failure to object to the sufficiency of

11

evidence of depraved indifference murder does not constitute representation falling below "an objective standard of reasonableness" under "prevailing professional norms." See Strickland, 466 U.S. at 687-88. "In assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices. Counsel is not required to forecast changes in the governing law." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (quoting Strickland, 466 U.S. at 690) (internal citations omitted). As discussed above, such an objection would have been unsuccessful under the law of New York in effect at the time of petitioner's conviction. Counsel cannot be faulted for failing to anticipate the subsequent shift in New York law. This shift was not merely, as the Second Circuit once described it, "the application of long-settled New York law to new facts." Policano, 430 F.3d 82, 92 (2d Cir. 2005); cf. Anderson v. Keane, 283 F. Supp. 2d 936, 942-45 (S.D.N.Y. 2003) (counsel's failure to raise issue was objectively unreasonable where subsequent Court of Appeals decision "added absolutely nothing to New York jurisprudence on the question"). Rather, as the New York Court of Appeals has recently explained, its decisions in this area starting in 2003 "represent a perceptible, evolving departure from the underpinnings of depraved indifference murder as expressed in" prior cases, which have since been "explicitly overruled." Policano, 7 N.Y.3d at 603. Petitioner was, therefore, not denied effective assistance of counsel on this basis. See Farr v. Greiner, No. 01 Civ. 6921, 2007 WL 1094160, at *41 (E.D.N.Y. Apr. 10, 2007) (rejecting ineffective assistance of appellate counsel claim based on failure to contest submission of depraved indifference murder count to jury); Crespo v. Fischer, No. 06 Civ. 2577, 2006 U.S. Dist. LEXIS 94769, at *21-*26 (S.D.N.Y. Nov. 27, 2006) ("Looking to the arc of New York law

on this point as analyzed by the New York State Court of Appeals in Policano, it is clear that" petitioner's counsel provided effective assistance despite failing to raise issue.)

For these reasons, petitioner has not established that the Appellate Division's opinion that he "was provided with meaningful representation," Cruz, 23 A.D.3d 577, was contrary to, or an unreasonable application of, clearly established federal law.

## CONCLUSION

For the foregoing reasons, the court denies the instant petition for a writ of habeas corpus. No certificate of appealability is granted with respect to any of the petitioner's claims, since the petitioner failed to make a substantial showing of any denial of his constitutional rights. The petitioner has a right to seek a certificate of appealability from the United States Court of Appeals for the Second Circuit. See 28 U.S.C. § 2253.

SO ORDERED.

/S/
Allyne R. Ross
United States District Judge

Dated:     June 4, 2007
              Brooklyn, New York

SERVICE LIST

*Pro Se* Petitioner
Nelson Cruz
# 99-A-1866
Shawangunk Correctional Facility
P.O. Box 700
Wallkill, NY 112589


Attorney for Respondent
Marie-Claude Palmieri Wrenn
Kings County District Attorney's Office
350 Jay Street, 20th Floor
Brooklyn, NY 11201